J-S50009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                   :         PENNSYLVANIA
                                   :
           v.                    :
                                   :
                                   :
SULIMAN ALI                   :
                                   :
          Appellant         :    No. 747 EDA 2020

Appeal from the PCRA Order Entered February 3, 2020
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0004208-2012

BEFORE:   BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.*

MEMORANDUM BY BENDER, P.J.E.:         **FILED: MARCH 1, 2021**

Appellant, Suliman Ali, appeals from the post-conviction court's order denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant avers that his trial counsel was ineffective for failing to file a motion to suppress evidence obtained as a result of the purportedly illegal stop of his vehicle. After careful review, we affirm.

The PCRA court summarized the facts and procedural history of Appellant's case, as follows:

> [O]n January 27, 2012, in Hatboro, Montgomery County[,] ... [Appellant] entered Burdick's News Agency ("Burdick's") and robbed Sandra Hollis, Mirta Atreides, Martin Atreides, and Michael Ballasy at gunpoint. Evidence at trial revealed that Mirta Atreides was eating lunch at the counter with her husband, Martin Atreides, when she felt someone nudge her twice on her back. When she turned around, she saw that an unknown man was holding a gun against her. Martin

---

* Retired Senior Judge assigned to the Superior Court.

Atreides, who was able to see the handgun in the robber's hand, described it as a small, black revolver, similar to a .38 caliber. The robber told Mr. and Mrs. Atreides[,] "I want your money," and forced them to the register where Sandra Hollis, the owner of Burdick's, was standing. At the register, the robber pointed the gun at Hollis. She immediately opened the register, began counting the money, and giving it to the robber. At this time, Michael Ballasy, a regular customer at Burdick's, walked in through the back door. [Appellant] made the four (4) victims walk to the back of the store. Once there, Hollis was able to hit the alarm button and the robber fled the scene.

The robber was caught on Burdick's video surveillance inside the store. He also was caught on All Systems TV and Satellite video surveillance, riding a mountain bike up to Burdick's at the time of the robbery. [Appellant], through counsel, stipulated to the authenticity of the videos recovered and that they appeared in court in the same condition as they did on January 27, 2012.

Shortly after the robbery occurred, Hatboro resident James DeHope saw a gold Jeep Grand Cherokee stopped in the middle of South Chester Avenue near his neighbor's residence at 87 Williams Lane. South Chester Avenue parallels York Road. Burdick's is located at the intersection of Byberry Road and York Road. The distance from Burdick's to 87 Williams Lane along roadways is about one quarter (.25) of a mile. The distance from 87 Williams Lane to 9 Hunters Way is approximately one (1) mile. [Appellant's] residence is 9 Hunters Way.

DeHope noticed that the gold Jeep had its front passenger door open. He saw that an African-American man, later identified … [as Appellant], was behind the wheel of the vehicle. DeHope observed an African-American woman, later identified to be [Appellant's] wife, Connie Johnson, walk around from behind the vehicle and get into the passenger seat. She was carrying a bundle wrapped in cloth that resembled a jacket under her arm. The car's hatch was not open nor was any door on the driver's side. The only other location [from which] the woman could have come … was DeHope's neighbor's house at 87 Williams Lane. DeHope had never seen these two (2) people before.

DeHope told a nearby police officer what he had seen and pointed out the gold Jeep to the officer.

Officer Andrew Valleley stopped the gold Jeep seen by DeHope on January 27, 2012, a few blocks [from] Burdick's [and] about forty-five (45) minutes to one (1) hour after the robbery occurred. [Appellant] was in the driver's seat and Johnson was in the front passenger seat. [Appellant] was wearing a gray sleeveless T-shirt and sweatpants, despite [the] cold[,] January weather. [Appellant] told O[fficer] Valleley that he had stopped his vehicle on South Chester Avenue because Johnson was vomiting outside the vehicle. There was no odor or sign of vomiting about Johnson. At South Chester Avenue, where [Appellant] and Johnson had been stopped, there were no signs that anyone had been vomiting in that area or the area nearby.[1] [Three days later,] Sergeant James Petrik … found a black knit cap under the bushes outside 87 Williams Lane.[2] An NMS Labs report found that the black knit cap located under the bushes at 87 Williams Lane had [Appellant's] DNA on it. [Appellant], through counsel, stipulated to the contents and results of the NMS report.

Police officers executed a search warrant on [Appellant's] home at 9 Hunters Way in Hatboro. From [Appellant's] home, police recovered a Taurus handgun, a bicycle, a pair of sweatpants, a blue nylon bag, a pair of sneakers, a pair of fingerless gloves, and four hundred sixteen dollars ($416) in U.S. currency. The black Taurus handgun closely resembled the gun used in the robbery at Burdick's on January 27, 2012. The bicycle closely resembled the robber's bicycle from the surveillance video[,] in that both bicycles had two (2) LED headlights on the handlebars, the same or similar color scheme, and a full-suspension mountain bike frame. The sweatpants also closely resembled the ones that the robber wore. The blue nylon bag, sneakers, and fingerless gloves recovered from [Appellant's] residence, all of which contained [Appellant's]

_____

[1] Appellant and his wife were permitted to drive away after the stop. **See** Appellant's Brief at 10 (citing N.T. Trial, 4/22/13, at 194).

[2] The circumstances surrounding Sergeant Petrik's discovery of the hat will be discussed in more detail, *infra*.

DNA, closely resembled the items the robber is shown to use in the video surveillance. Police found the four hundred sixteen dollars ($416) in U.S. currency in a purse belonging to Johnson.

[Appellant], through counsel, stipulated that his prior record makes him a person not to possess a firearm pursuant to 18 Pa.C.S. § 6105 and that he did not possess a license to carry a firearm pursuant to 18 Pa.C.S. § 6106. [Appellant] also stipulated to the fact that the firearm recovered from his home was tested by Detective John Finor and found to be operable and within the definition of "firearm" under 18 Pa.C.S. §§ 6105 and 6106.

On April 20, 2012, [Appellant] was taken into custody by the Hatboro Police Department. Once at the station, Detective Sergeant Cameron Goold, a 25-year veteran of the Hatboro Police Department, gave [Appellant] his *Miranda*[3] warnings, both orally and in writing. Det. Sgt. Goold reviewed the *Miranda* form with [Appellant], and [Appellant] indicated that he understood, initialed each question, and signed the form. [Appellant] indicated that he was willing to speak with police and give his voluntary statement. At around 1:30 p.m., [Appellant] gave a written statement to Hatboro Police stating that he did not want to speak about the robbery at Burdick's[,] except to say that his wife had nothing to do with it. After taking this statement, Hatboro Police placed [Appellant] in a holding cell.

At around 2:30 p.m., as Det. Sgt. Goold walked by the holding cell in order to leave the processing room, [Appellant] asked to give a second statement. Det. Sgt. Goold asked [Appellant] what he wanted to tell him, and [Appellant] responded, "I did it." At this time, Det. Sgt. Goold took [Appellant] out of the holding cell, and placed him in the processing room, where he took out a second *Miranda* rights form and again advised [Appellant] of his rights. He followed the same process and procedure to obtain a signed *Miranda* form and statement from [Appellant].

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 4 -

In [Appellant's] second statement, he admitted to committing the robbery at Burdick's on January 27, 2012. He admitted that he stole nine hundred ($900) in U.S. currency from Burdick's to pay taxes on a house in New Jersey. He admitted that he used a gun during the robbery. He described how when he arrived outside of Burdick's, he sat in the front of the empty bank next door, waiting for people to exit. He admitted that while he was committing the robbery, there were four (4) people inside the store and he told them to go to the cash register. He described how when he initially walked in, two (2) of the victims were sitting down, one (1) was by a cash register, and there was an older gentleman in the back of the store. [Appellant] admitted that he told the woman behind the cash register to give him the money and she then started to count it. He then admitted that after he got the money he ran out the front door, got on his bicycle and fled the scene.

Det. Sgt. Goold testified that his exchange with [Appellant] was cordial, polite, and conversational in tone. [Appellant] did not show signs of impairment or duress. Police never threatened nor made any promises to [Appellant]. At no time after waiving his rights did [Appellant] invoke his rights to remain silent or to have a lawyer present. On April 22, 2013, this [c]ourt held a suppression hearing, where [Appellant] sought to suppress the two (2) written statements given by [Appellant] to Hatboro Police on April 20, 2012[,] on the ground that [Appellant's] waiver of his *Miranda* rights was involuntary. This [c]ourt denied the Motion to Suppress and held that [Appellant] gave both statements knowingly, voluntarily, and intelligently after having been informed of his *Miranda* rights each time. The notes of testimony of the suppression hearing held on April 22, 2013[,] were stipulated to and made part of the trial record as it related to the manner in which [Appellant's] statements were taken.

On April 23, 2013, this [c]ourt found [Appellant] guilty beyond a reasonable doubt of one (1) count of Robbery - Threatening Serious Bodily Injury, 18 Pa.C.S. § 3701(a)(1)(ii); one (1) count of Robbery - Committing or Threatening to Commit any F1 or F2, 18 Pa.C.S. § 3701(a)(1)(iii); one (1) count of Robbery - Taking Property by Force, 18 Pa.C.S. § 3701(a)(1)(iv); one (1) count of Person not to Possess a Firearm, 18 Pa.C.S. § 6105(a)(1);

- 5 -

and one (1) count of Possessing a Firearm Without a License, 18 Pa.C.S. § 6106(a)(1).

On September 16, 2013, the Commonwealth having filed a notice of intent to seek mandatory sentence on each of [Appellant's] two (2) first[-]degree robbery convictions, this [c]ourt sentenced [Appellant] to two (2) concurrent sentences of life imprisonment without the possibility of parole.[4]

Trial Court Opinion, … 4/16/14, [at] 1-7 (citations to [the record] omitted).

[Appellant] filed a post-sentence motion, which this court denied. He appealed and the Superior Court affirmed. *Commonwealth v. Ali*, [120 A.3d 1063] … (Pa. Super. … 2015) [(unpublished memorandum)]. He filed a PCRA petition and the Commonwealth agreed to relief in the form of reinstatement of [Appellant's] right to file a petition for allowance of appeal. Our Supreme Court denied allowance of appeal on March 7, 2018, *Commonwealth v. Ali*, [182 A.3d 441] … (Pa. … 2018), making [Appellant's] judgment of sentence final on or about June 7, 2018. *See* 42 Pa.C.S. § 9545(b)(3) ([stating] judgment of sentence becomes final upon, *inter alia*, the expiration of the time for seeking discretionary review from the United States Supreme Court); U.S. Sup.Ct.R. 13(1) ([stating,] "[a] petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review[]").

[Appellant] filed the instant PCRA petition on April 11, 2018. Appointed PCRA counsel, Patrick McMenamin, Esq., filed an amended petition on [Appellant's] behalf, alleging trial counsel had been ineffective for failing to investigate an alibi defense. The Commonwealth filed a court-ordered response, seeking dismissal of the amended petition and this court scheduled a hearing. In the interim, [Appellant] requested new counsel. This court

---

[4] Appellant's life sentences were imposed pursuant to the "Third Strike Law." *See* 42 Pa.C.S. § 9714(a)(2) ("Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.").

ultimately granted that request and appointed Brooks Thompson, Esq., who filed a second amended petition raising additional issues.

This court convened a hearing on the second amended petition, at which PCRA counsel narrowed the issue to whether trial counsel had been ineffective for failing to pursue a pre-trial motion challenging the stop of [Appellant's] vehicle on the day of the robbery. The parties stipulated to the incorporation of the prior testimony of Officer Valleley and James DeHope. [Appellant] then presented live testimony from trial counsel, Eugene P. Tinari, Esq., and Detective Goold. The Commonwealth offered live testimony from … Sergeant James Petrick. This court denied the second amended petition after the hearing and [Appellant] appealed.

PCRA Court Opinion (PCO), 5/18/20, at 1-7.

Appellant complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court thereafter filed its Rule 1925(a) opinion. Herein, Appellant states one issue for our review:

I. Whether the PCRA [c]ourt erred in concluding that trial counsel was not ineffective for failing to file and litigate [a motion to suppress] evidence derived from the stop of Appellant's vehicle[,] where there is substantial merit to the claim that the vehicle stop was not justified by reasonable suspicion?

Appellant's Brief at 4.

Preliminarily, we observe:

When analyzing ineffectiveness claims, we begin with the presumption that counsel was effective. *Commonwealth v. Spotz*, … 18 A.3d 244, 259–60 ([Pa.] 2011). "[T]he defendant bears the burden of proving ineffectiveness." *Commonwealth v. Ligons*, 971 A.2d 1125, 1137 ([Pa.] 2009). To overcome the presumption of effectiveness, a PCRA petitioner must demonstrate that: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient

performance." *Id.* "A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." *Id.* To establish the second ineffectiveness prong, the petitioner must prove that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Spotz*, 18 A.3d at 260 (quoting *Commonwealth v. Williams*, … 899 A.2d 1060, 1064 ([Pa.] 2006)). To establish the third prong, the petitioner "must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." *Id.*

*Commonwealth v. Watley*, 153 A.3d 1034, 1040 (Pa. Super. 2016).

In addition,

[t]his Court has previously found that "[t]he failure to file a suppression motion under some circumstances may be evidence of ineffective assistance of counsel." *Commonwealth v. Metzger*, … 441 A.2d 1225, 1228 ([Pa. Super.] 1981); *see also Commonwealth v. Ransome*, 402 A.2d 1379, 1381 ([Pa.] 1979). "However, if the grounds underpinning that motion are without merit, counsel will not be deemed ineffective for failing to so move." *Metzger*, 441 A.2d at 1228. "[T]he defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable." *Commonwealth v. Melson*, … 556 A.2d 836, 839 ([Pa. Super.] 1989).

*Id.* at 1044.

Here, Appellant avers that his trial counsel acted ineffectively by not seeking "suppression of evidence derived from the unlawful stop of [Appellant's] vehicle[,]" which he claims was not supported by reasonable suspicion. Appellant's Brief at 14. Appellant stresses that the stop was made 45 minutes to an hour after the robbery, and .25 miles away from the scene of the crime. "Neither the vehicle nor its two occupants matched the description of the sole perpetrator of the robbery, and the brief observations

of [Appellant] and the passenger were of completely lawful and unremarkable behavior." *Id.* Based on these circumstances, Appellant avers that police lacked reasonable suspicion to stop his vehicle, and that there is arguable merit to his claim that counsel should have challenged the stop in a motion to suppress.

Appellant further contends that his trial counsel had no reasonable basis for not raising the illegality of the stop in a suppression motion. At the PCRA hearing, counsel stated that he did not file such a motion because "there was nothing recovered" from the stop to suppress. *Id.* at 23 (quoting N.T. PCRA Hearing, 1/21/20, at 4). Appellant counters counsel's testimony, arguing that if not for the stop, there would have been no direct evidence that he was in the general vicinity of the robbery close to the time it was committed. He also points out that, due to the stop, Officer Valleley testified that Appellant was not dressed appropriately for the winter weather on the day of the robbery, and he seemingly lied to police that his passenger had vomited. *Id.* at 23-24. "Lastly, and most importantly, the black knit watch[-]style cap was recovered in the bushes in the area of Chester Ave[nue] and Williams Lane on January 30, 2012[,] as a direct result of the vehicle stop in that area on January 27, 2012." *Id.* at 24. According to Appellant, but for the illegal stop of his vehicle, officers would not have later searched that area and found the hat. *Id.* Thus, he claims his counsel acted unreasonably in not seeking to suppress this evidence.

Finally, Appellant argues that he was prejudiced by the admission of the evidence stemming from the illegal stop. Again, he points out that the stop placed him "in the vicinity of the crime on the date of its commission," and that it also led to the discovery of the black cap "that was tested for DNA and found to match the DNA recovered from items in [Appellant's] home." *Id.* at 26. Appellant insists that "[t]he discovery of the … cap, combined with [his] evasive answers to law enforcement's questions during the stop, was extraordinarily damning evidence improperly placed before the fact[-]finder due to trial counsel's failure to move to suppress that evidence." *Id.* at 26-27.

Finally, Appellant claims that the probable cause to support the warrant for his arrest "was largely based on information derived from the unlawful stop…." *Id.* at 27. Appellant's arrest ultimately led to his confession in this case and, thus, he suggests that, without the evidence obtained during his illegal stop, his confession would not have been obtained and admitted against him at trial. For all of these reasons, Appellant insists he was prejudiced by his trial counsel's failure to file a motion to suppress based on the illegality of the stop of his vehicle.

We are unconvinced. First, even if we concluded that Appellant's underlying claim has arguable merit, and that his counsel had no reasonable basis for not filing a motion to suppress evidence obtained from the stop of his vehicle, Appellant has not demonstrated that he was prejudiced by that failure. First, we agree with the PCRA court that the black hat would not have

- 10 -

been suppressed as fruit of the allegedly illegal stop. *See* PCO at 11 n.5. "[T]o prevail on a suppression motion, a defendant must demonstrate a legitimate expectation of privacy in the area searched or effects seized, and such expectation cannot be established where a defendant has meaningfully abdicated his control, ownership or possessory interest." *See Commonwealth v. Hawkins*, 718 A.2d 265, 267 (Pa. 1998).

> Simply put, "no one has standing to complain of a search or seizure of property that he has voluntarily abandoned." *Commonwealth v. Shoatz*, … 366 A.2d 1216, 1220 ([Pa.] 1976).
>
> Our Supreme Court has explained, "abandonment of a privacy interest is primarily a question of intent and may be inferred from words spoken, acts done, and other objective facts." [*Commonwealth v.*] *Dowds*, 761 A.2d [1125,] 1131 [(Pa. 2000)]. "All relevant circumstances existing at the time of the alleged abandonment should be considered." *Shoatz*, 366 A.2d at 1220. "The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *Id.*

*Commonwealth v. Kane*, 210 A.3d 324, 330–31 (Pa. Super. 2019), *appeal denied*, 218 A.3d 856 (Pa. 2019).

Here, the PCRA court concluded that Appellant failed to meet his burden of proving an expectation of privacy in the location where the hat was found, or in the hat itself. *See* PCO at 11 n.5 (citing *Dowds*, *supra*). We agree. Appellant does not attempt to argue that he had a privacy interest in the property where the hat was found, which was owned by an unknown third-party. Moreover, Appellant clearly abandoned the hat, which remained on the

ground, underneath bushes, for three days after the stop of his vehicle. Although Appellant was released after the stop, he did not retrieve the hat, indicating that he intended to abandon it. Thus, we agree with the PCRA court that the hat would not have been suppressible as fruit of the purportedly illegal stop of Appellant's vehicle.

Second, we also reject Appellant's suggestion that the purportedly illegal stop of his vehicle also rendered his arrest illegal and his confession involuntary. The warrant for Appellant's arrest was supported by probable cause, even without consideration of any evidence stemming from the stop of his vehicle. For instance, the affidavit stated that two days after the robbery, two anonymous individuals came into the police station and identified Appellant as the person they saw in still photographs of the robber that were shown by the local media. *See* Affidavit of Probable Cause (Attached to Criminal Complaint), 4/19/12, at 3. Police then searched Appellant's records, revealing his lengthy criminal history. *Id.* They also discovered Appellant's home address, and that he shared his residence with Connie Johnson, who owned a gun similar to the one used in the robbery. *Id.* When police surveilled Appellant's residence, they observed a bike outside his home that was similar to the one used by the robber. *Id.* at 4. A search warrant was obtained for Appellant's residence, revealing a .38 caliber gun and cash, as well as items similar to those worn by the robber, including fingerless gloves, gray sweatpants, a black hat, and gray sneakers. *Id.* We conclude that, even without considering the stop of Appellant's vehicle, or any evidence that he

claims was linked thereto, the totality of these circumstances was sufficient to demonstrate probable cause that Appellant was involved in the robbery. *See Commonwealth v. Taylor*, 850 A.2d 684, 686-87 (Pa. Super. 2004) ("The test in this Commonwealth for determining whether probable cause exists for the issuance of an arrest warrant is the 'totality of the circumstances.' *Illinois v. Gates*, 462 U.S. 213 … (1983). In determining whether probable cause exists, a magistrate is not required to find a showing of criminal activity; mere probability of such criminal activity is sufficient for probable cause."). Therefore, we reject Appellant's suggestion that his arrest was illegal and his confession involuntary.

In sum, considering the evidence discovered inside Appellant's home, the black hat that he abandoned in the bushes of a third-party's yard, and his confession to committing the robbery, he has failed to demonstrate that he was prejudiced by counsel's failure to seek suppression of the evidence stemming from the stop of his vehicle. Such evidence would have amounted only to his presence near the scene of the robbery approximately 45 minutes after it was committed, and his evasive answers to questions by Officer Valleley. There is not a reasonable probability that the suppression of this evidence would have changed the outcome of his trial. Therefore, the PCRA

court did not err in rejecting his ineffectiveness claim and denying his petition.[5]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/1/21

---

[5] Our rationale for affirming the order dismissing Appellant's petition varies from the reasons offered by the PCRA court. Specifically, the court denied Appellant's petition for the following reasons: (1) counsel had a reasonable basis for not filing a suppression motion, because no suppressible evidence stemmed from the stop; (2) the stop of Appellant's vehicle was lawful because it was supported by reasonable suspicion; and (3) even if the stop was unlawful, the evidence recovered as a result thereof would have been inevitably discovered by lawful means. *See* PCO at 9-12. We express no opinion on the validity of the court's conclusions in these regards. Instead, we simply choose to rely on what, in our view, is the more clear-cut issue of Appellant's failure to demonstrate prejudice, and affirm the court's order denying his petition on that basis. ***See Commonwealth v. Hutchins***, 760 A.2d 50, 54 (Pa. Super. 2000) ("[T]his Court may affirm the decision of the PCRA [c]ourt if it is correct on any basis.") (citations omitted).